### MARKS et al. v. FIREMAN'S FUND INS. CO.

(District Court, S. D. New York. January 5, 1910.)

INSURANCE (§ 115*)—MARINE INSURANCE—INSURABLE INTEREST—SALES—PASSING TITLE.

  M. & Co., on Febuary 10, 1909, sold certain beans, "duty paid, ex dock New York," evidenced by a broker's bought and sold note. Before arrival the buyers transferred their interest in the contract to F. On February 27, 1909, M. & Co. sold certain other beans to F., "ex dock in bond"; both lots being payable in cash 10 days after date of delivery. The ships on

which both consignments were transported arrived at New York on March 25th and 26th, respectively, and were discharged; M. & Co. entering both lots in the custom house in bond. On March 30th they delivered to F. two delivery orders for the beans, addressed to the steamship company, on which F.'s representative engaged a bonded lighter to transfer the goods to a bonded warehouse, but while the beans were on the lighter she sank, and the beans were a total loss. Thereafter F. paid M. & Co. a sum equal to the price of the beans, but took from them an assignment of their claim against the insurance company which had insured the beans, with an agreement that suit should be prosecuted on the policies in the name of M. & Co. for S.'s benefit. *Held* that, notwithstanding the payment of the price, the title to the beans remained in M. & Co. prior to their withdrawal from bond and payment of the duty, so that M. & Co. had an insurable interest therein at the time of the loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 150; Dec. Dig. § 115.*]

In Admiralty. Action by Samuel Marks and others against the Fireman's Fund Insurance Company. Judgment for complainants.

Wing, Putnam & Burlingham (Everett Masten, of counsel), for libelants.

Kneeland & Harison (Lawrence Kneeland, of counsel), for respondent.

HOLT, District Judge. This action is brought to recover insurance upon two lots of beans, one of 750 and the other of 500 bags, insured under a policy of marine insurance issued by the respondent to the libelants. It is not controverted that the policy was duly issued, that it originally covered the merchandise in question, and that the merchandise was lost by a marine peril. The only question in the case is whether the libelants, who had contracted to sell the beans, had an insurable interest in them when the loss occurred.

On February 17, 1909, there were shipped at Fiume, on the steamship Atlanta, 1,750 bags of beans consigned to Marks & Co., the libelants, and covered by the said policy. On February 24th a like shipment of 500 bags was made on the steamship Argentina, similarly consigned and insured. On February 10, 1909, the libelants entered into a contract of sale with Maynard & Child, of Boston, evidenced by a broker's bought and sold note, whereby they sold 750 bags of beans, "February shipment from Europe, at $2 per bushel of 60 pounds, duty paid, ex dock New York. Terms: Net cash in 10 days from date of delivery order. Buyers assume the risk of importation." Before the arrival of the beans, Maynard & Child transferred their interest in this contract to C. J. Ferrin, Jr., of New York. On February 27, 1909, the libelants entered into another contract of sale with C. J. Ferrin, Jr., evidenced by a broker's bought and sold note, whereby they sold 500 bags of beans, bought for February shipment, at $1.65 per bushel, "ex dock in bond. * * * Terms: Net cash in 10 days from date of delivery."

The steamship Atlanta arrived at her dock on March 25th, and the 750 bags of beans, to fulfill the first contract, were discharged on the same day. The steamship Argentina arrived on March 26th, and the 500 bags of beans, to fulfill the later contract, were discharged on

March 29th. The libelants entered both lots of beans in the custom house in bond. On March 30th they delivered to Ferrin two delivery orders for the beans, addressed to the steamship company. Thereupon a representative of Ferrin engaged the bonded lighter Clio to transfer the goods to a bonded warehouse. The 500 bags from the Argentina were loaded on the lighter on April 5th. The 750 bags from the Atlanta were loaded on the same lighter April 6th and 7th. All this was done under the direction and supervision of Ferrin's representative, and the charges for lighterage were to be borne by Ferrin. On the night of April 7th the lighter Clio sank at the dock where she had been loaded, and the beans on board were a total loss. After the loss the libelants claimed that they had sold and delivered the beans to Ferrin, and that Ferrin was bound to pay for them. Ferrin thereupon paid to Marks & Co. a sum equal to what would have been due from Ferrin for the beans, but took from Marks & Co. an assignment which, in consideration of such payment, assigned to Ferrin the claim of Marks & Co. against the insurance company, with an agreement that this suit should be prosecuted in the name of Marks & Co., but for the benefit of Ferrin.

The question in this case, whether the title to the beans had passed to Ferrin, leaving no insurable interest in them in Marks & Co., is a very close question. The contracts of sale provided for the sale "ex dock," which would ordinarily mean that the beans, upon their departure from the dock, became the property of Ferrin. Marks & Co. had given to Ferrin delivery orders for the beans. Ferrin's representative had arranged for their transfer to the bonded warehouse, had employed a bonded lighter, had taken the beans from the steamship under the delivery orders, and had supervised their transfer into the bonded lighter. After the loss Marks & Co. claimed, and Ferrin apparently assented to the claim, that Ferrin had taken the goods, and was bound to pay for them. Ferrin did pay Marks & Co. a sum of money equal to the price of the beans, and the respondent claims that the assignment which was executed was a mere attempt to maintain the appearance of a claim against the insurance company which did not exist. I think that the fact that Marks & Co. claimed that the title had passed to Ferrin, and that Ferrin paid to Marks & Co. a sum equal to the price of the beans, is not decisive in the case. If Marks & Co. still had, in fact, an insurable interest in the beans, the respondent is liable upon its policy, and the fact that both Marks & Co. and Ferrin took a different position does not, in my opinion, affect the respondent's legal liability.

The real question is: Did Marks & Co. have, at the time of the loss, an insurable interest in the beans? Upon this question, the fact that they were entered in bond seems to me the decisive point. The contract for 750 bags was, by its terms, a sale "duty paid ex dock," on terms of net cash in 10 days from date of delivery order. This was a contract for the payment of the duty by the seller and the delivery of the goods from the dock. The entry of the goods in bond, if not consented to, would be a violation of the contract. The second contract provided for the sale of the 500 bags "ex dock in bond." It is a little difficult to see how this contract could be complied with. If

the goods were to be entered in bond, they would have to be so entered by the consignees, Marks & Co., and they, therefore, apparently could not pass into the possession of the purchaser when they left the dock. Probably what was meant was that they should be entered in bond, and that, substantially at the same time, a withdrawal permit should be obtained, and indorsed to the purchaser, so that as soon as the beans actually reached the warehouse they could be disposed of by him. In any case the purchaser under the second contract would have to pay the duty, as is clearly shown by the absence of any statement about the duty, and the difference in price in the two contracts.

In fact, however, both lots of beans were entered by Marks & Co. in bond, apparently with the consent and approval of Ferrin. No duty was, paid on either lot, and no withdrawal entry was made by Marks & Co., or withdrawal permit obtained. The legal title to the goods, therefore, as they lay on the lighter, and as they would have lain in the warehouse, if they had ever reached the warehouse, remained in Marks & Co. In respect to the first lot, before Ferrin could obtain title to the goods, Marks & Co. would have been obliged to pay the duty, sign a withdrawal entry, obtain a withdrawal permit, and indorse it to Ferrin; and the same things would have been necessary to be done in respect to the second lot, except to pay the duty. Marks & Co. retained the legal title and the complete control over the goods. If they had seen fit, notwithstanding their existing contracts with Ferrin, to sell the goods to any one else, such person, purchasing in good faith, without notice of Ferrin's contract, would, in my opinion, have obtained a perfect title. Marks & Co., indeed, would have been liable under their contract to a suit for damages by Ferrin, but Ferrin could not have claimed that the goods themselves were his, and that the sale of them by Marks & Co. to some third person did not transfer the title.

The respondent's counsel argues that, admitting that the libelants had a lien upon the goods for the contract price, and consequently an insurable interest in them, the law of subrogation would defeat their recovering the loss from the respondent. If the payment by Ferrin is to be regarded as a payment of the price of the goods, and title had in fact passed to Ferrin, subject to a mere lien by Marks & Co. on the goods for the duty, the insurance company probably, upon paying the insurance, would have been entitled to receive from Ferrin, if he had not paid the price, or from Marks & Co., if they had received it, the amount which Ferrin had paid them, after satisfying the claim of Marks & Co. for the duty. But, in my opinion, Marks & Co. had more than a mere lien on the goods. They had still the legal title to them, and a jus disponendi in them. That being so, they are entitled to recover the insurance. The fact that, when recovered, it will be their duty to pay it to Ferrin, is a matter with which the insurance company, in my opinion, has no concern.

My conclusion therefore is, in this case, that Marks & Co. retained an insurable interest in the goods at the time of their loss, and are entitled to recover the amount demanded in the complaint.